WILLIAM H. TEASDALE & others *vs.* NEWELL AND SNOWLING
CONSTRUCTION COMPANY.

Norfolk.    January 23, 1906. — June 21, 1906.

Present: KNOWLTON, C. J., MORTON, LATHROP, HAMMOND, & SHELDON, JJ.

*Equity Pleading and Practice.    Stable.    License.    Metropolitan Park Commission.    Board of Health.    Statute.*

On an appeal from a decree dismissing a bill in equity which does not state the ground of the decision, the burden is on the plaintiff to show that on the facts which appear a decree in his favor was necessary.

On an appeal from a decree in equity where substantially all of the evidence was oral the findings of the judge who heard the case will not be disturbed unless plainly wrong.

R. L. c. 102, § 69, providing that "no person shall erect, occupy or use for a stable any building in a city whose population exceeds twenty-five thousand unless such use is licensed by the board of health of said city" does not apply to a stable placed temporarily on land taken for a reservation by the metropolitan park commissioners for the use of a contractor employed by the commissioners in the preparation of the land for a park, which is reasonably necessary for the prosecution of that work and was erected under a vote of the commissioners and by their sanction.

The general statute R. L. c. 102, § 69, requiring in cities of a certain population a license from the board of health before a stable can be erected, must be held to be subordinate to the special statute St. 1893, c. 407, § 4, which authorizes the metropolitan park commissioners to "do all acts needful for the proper execution of the powers and duties granted to and imposed upon" them as agents of the Commonwealth.

BILL IN EQUITY, filed November 3, 1905, by the members of the board of health of the city of Quincy, to restrain the defendant from maintaining a certain stable without a license under R. L. c. 102, §§ 69, 71.

The defendant in its answer alleged that it had made a contract with the metropolitan park commissioners to do the

grading and other work upon certain lands in Quincy which the commissioners had taken for park purposes under the provisions of St. 1893, c. 407, and St. 1895, c. 450 : that in order to carry out the defendant's contract it was necessary to provide stable accommodation for a large number of horses in the immediate vicinity of the work ; that the defendant, being unable to find adequate stable room for its horses in the vicinity, applied to the plaintiffs for a license to erect and use a stable on land in Quincy which had not been taken as part of the reservation by the commissioners, and that the application was refused ; that on October 11, 1905, the defendant received permission and authority from the metropolitan park commission to erect a stable upon a part of the land taken for a reservation ; that the defendant proceeded to erect there a structure to be used as a stable during the construction work under its contract and to be removed at the completion of its contract ; and that the erection and use of this stable was incidental and necessary to the improvement of the reservation.

In the Superior Court the case was heard by *Fessenden,* J. He appointed a commissioner under Chancery Rule 35 to take the evidence to be reported to this court, and made a final decree that the bill be dismissed. The plaintiffs appealed. The character of the evidence is indicated sufficiently in the opinion.

*A. E. Pillsbury,* ( *G. E. Adams* with him,) for the plaintiffs.

*S. C. Brackett,* for the defendant.

HAMMOND, J. Inasmuch as the ground on which the bill was dismissed is not mentioned, the plaintiffs have the burden of maintaining that upon the facts which appear they have a right to a decree in their favor. *Donovan* v. *McCarty,* 155 Mass. 543. Moreover, since the evidence at the hearing was substantially all oral, the findings of the trial judge will not be disturbed unless plainly wrong. *Dickinson* v. *Todd,* 172 Mass. 183.

We have examined the evidence, and in view of the locality of the work, the number of horses employed, the attempts made by the respondent to secure stable room, the action of the board of health upon the petition made to them and the apparent attitude of the board upon the whole question of stable room, the propriety of doing the work with horses and the saving thus

made in expense when compared with other methods of doing the work, a reasonable and proper view which the trial judge could have taken of the evidence was that the method adopted and carried out to procure stable room was reasonably necessary for the prosecution of the work. At least such a view of the evidence could not be set aside as clearly wrong, and it is to be presumed in support of the decree that the trial judge took that view. In the same manner it is to be presumed that the park commissioners considered it reasonably necessary that the stable should be erected upon the park land during the work to be done under the contract, and that under a vote of the board it was erected upon a spot selected by the engineer, and that this act was sanctioned by the commissioners.

Here then is a case where the commissioners have made a contract for the proper preparation of land taken for park purposes, and it is reasonably necessary to the performance of that contract that a stable should be placed temporarily upon the unfinished park, and such a stable has been erected under a vote of the commissioners and by their sanction.

R. L. c. 102, § 69, reads thus: " No person shall erect, occupy or use for a stable any building in a city whose population exceeds twenty-five thousand unless such use is licensed by the board of health of said city, and, in such case, only to the extent so licensed." Quincy, within whose limits the stable stands, is a city of more than twenty-five thousand inhabitants, and the erection and use of the stable has not been licensed by the board of health of that city.

The question is whether the section above quoted is applicable to this stable. The statutes under which the metropolitan park commissioners act contain elaborate provision for the establishment of parks or "open spaces for exercise and recreation." St. 1893, c. 407. St. 1894, cc. 288, 483. The commissioners are authorized to acquire, by right of eminent domain or otherwise, and to " maintain and make available," such open spaces for such purposes, to take charge of the same, to make rules and regulations for the government and use of the same, and further, in general to " do all acts needful for the proper execution of the powers and duties granted to and imposed upon " them. St. 1893, c. 407, § 4. In a word, these parks are placed

under the control of these commissioners acting as the agents of the State in exercising the authority of the sovereign over its own property. As such agents, performing the duty of making available for park purposes the land in question, it is found reasonably necessary for them to erect upon it and use this stable. Such an act must be regarded as needful in the proper execution of the powers which the State may exercise over its own property; and the general law made for the regulation of citizens must be held subordinate to this special statute regulating the use of the property of the State unless there is express provision to the contrary. It is not to be presumed that the Legislature intended to give to the local licensing board the authority to thwart the reasonably necessary efforts of the park commissioners to perform their duty as agents of the State.

*Decree affirmed.*